EDWIN F. BABBAGE, Plaintiff, v. DANIEL W. POWERS, Defendant.

*Supreme Court, Fifth Department, General Term, October 19, 1889.*

1. *Nuisance. License.*—A license or permit from the municipal authorities to excavate under the sidewalk may be inferred from the use of the vault for nine years without objection by, but with actual knowledge of, the city officials that it existed.
2. *Same. Liability.*—An owner of premises, if safe and secure when leased, is not responsible for an after-occurring nuisance during the term, unless he is, in some manner, in fault for its creation or continuance.
3. *Same.*—Bare ownership and receipt of rent will not create such liability.

Motion by the plaintiff for a new trial, founded on an exception to the order of the court directing a nonsuit.

*Theodore Bacon*, for plaintiff.

*Albert H. Harris*, for defendant.

BARKER, P. J.—On the undisputed evidence, two facts were established on the trial which, in law, exempt the defendant from liability for the injuries which the plaintiff sustained, and justified the ruling granting a nonsuit, although the plaintiff was the owner of the premises on which the accident occurred. The first is that the excavation under the sidewalk was made and covered with flagstones with the consent of the municipal authorities of the city of Rochester. The evidence bearing on this question was of such a character, and so conclusive, that there was nothing for the consideration of the jury. The store in front of which the injury happened was located in the central part of the city, and on one of the principal business streets in constant use by the public. The building was constructed

in 1876, and at that time the area under the pavement was excavated to the depth of the cellar, and extended to the curb and was covered with flagstone supported on iron girders and firm stone walls. In the walk there was an opening for the purpose of elevating and lowering goods from and to the celler. Prior to the building of the store there was a stone sidewalk, which had its foundation on the solid earth. The year the building was erected the public streets and sidewalks were in charge of an executive board, consisting of several members, who possessed the powers of highway commissioners, and they kept a record of their doings, in which entries were made by the clerk of the board. For some time previous to the erection of this building it was common practice, in the business part of the city, to make excavations under the sidewalks and to cover the same with flagstone, with openings therein as means of access to the excavations and to cellars under the stores.

The clerk of the board, who was also, during the time the store was being erected, a member of the executive board, knew of the excavation under the sidewalk, and the manner in which it was covered ; and one of the members of the board erected the building under a contract with the owner. There was no entry made in the records kept by the executive board showing that a permit was given the owner to make the excavation, nor was there any proof of a consent in writing that the same might be done. It was a custom of the members of the board to go about the city and inspect the condition of the streets and sidewalks. There is no proof that the owner or occupant of the premises were requested to fill up and discontinue the area ; nor is there proof that complaint of any kind was made by individuals or the city authorities against the use of the space under the sidewalk for the purposes to which it was devoted.

While it does not appear by positive proof that the owner obtained a license or permit from the municipal authorities to excavate the space under the sidewalk, such authority

may be reasonably inferred from the use of the same, for the period of nine years without objection, with actual knowledge on the part of the city officials that the same existed. Robbins *v.* Chicago City, 4 Wallace, U. S. 657 ; Jennings *v.* Van Schaick, 108 N. Y. 530.

It is well known that the space under the sidewalks in the most important streets, in large cities, is generally excavated, and devoted to some practical use in connection with the business carried on in the building with which it is connected, and such position must be well known to the officers having charge of the public streets.

No doubt can be entertained but that the city did consent that the space under the sidewalk might be excavated and devoted to the use for which it was intended. The city having consented to the use of the public street for the purpose indicated, the owner was not guilty of maintaining a nuisance so long as the space was securely covered. Although the city authorities gave their consent, the duty was imposed upon the owner or occupant to safely cover the area under the sidewalk, so as to make it secure for the public to pass over the same, and if not performed, the area became an unlawful obstruction to that portion of the streets and a nuisance.

The other controlling fact established by the evidence is, that the sidewalk in front of the store was in a safe and secure condition up to about the time of the accident. There is no proof of negligence on the part of the owner or occupant up to that time. There is no pretence that the sidewalk in front of the store was out of repair, and was not entirely safe up to near the time of the accident. Conceding that the sidewalk was out of repair and in a dangerous condition at the time the plaintiff received his injuries, we have to inquire if the defendant was guilty of any negligence which charges him with liability to the plaintiff. This question must be answered in the negative, for the reason that he was not in possession and did not have control of the

premises at the time the sidewalk became insecure, nor when the plaintiff was injured. The defendant purchased the premises in 1881, and at that time they were occupied by Mr. Harris, under a lease from the defendant's grantor which had not expired. The tenant attorned to the defendant, and when the time expired the defendant, by an oral agreement, renewed the lease, for an indefinite term, at the same rental, which was paid by him to the defendant.

The plaintiff contends that this arrangement was, in law, a new demise of the premises. This is conceded, and it must be admitted that the relation of landlord and tenant existed at the time of the accident between the defendant and Harris. The terms of the original lease, under which Harris entered, were not disclosed on the trial. Harris had been in possession under that lease before the defendant made his purchase, and the renewal of the lease was made two or three years before the plaintiff was injured.

It is an undisputed fact, that the premises were in the sole and actual possession of Harris, as the defendant's tenant, when the sidewalk became out of repair and in an unsafe condition. As it is not disclosed that the defendant agreed to keep the sidewalk in repair, he was under no obligation to his tenant or the public to keep the same in good repair and in a secure condition, so that the same could be used with safety, nor was he in possession of the premises, and for these reasons he was not guilty of negligence, although he was the owner of the property. In Clancy *v.* Byrne, 56 N. Y. 129, it is held that if the premises are in good repair when demised, but afterwards become ruinous and dangerous, the landlord is not responsible therefor, either to the occupant or the public, unless he has expressly agreed to repair or has renewed the lease after the need of repair has shown itself. See also, Swords *v.* Edgar, 59 N. Y. 28 ; Wolf *v.* Kilpatrick, 101 Id. 146 ; Ahern *v.* Steele *et al.*, 26 N. Y. State Rep. 295.

As the pavement was safe and secure when the defendant

demised the premises to Harris, he is not responsible for an after-occurring nuisance, unless, in some manner, he is in fault for its creation or continuance. His bare ownership and receiving rent for the use of the premises will not produce that result. Such is the current of all the authorities in this state. See Ahern *v* Steele, *supra*, and cases there cited. There is no evidence indicating what caused the injury to the pavement, or how long the sidewalk had been in an unsafe condition before the accident, but it is conceded that it happened long after the reletting by the defendant to Harris, and that it had not long existed when the plaintiff fell through the pavement into the area.

Motion for a new trial denied, and judgment ordered for the defendant on the nonsuit.

DWIGHT, J., concurs ; MACOMBER, J., not sitting.

---

### NOTE ON "LIABILITY OF LANDLORD AND TENANT FOR A NUISANCE."

If the owner creates a nuisance upon his premises and then demises them while it yet exists, and is in the receipt of rent therefrom at the time of an accident, he is responsible for the resulting damage. McGrath *v.* Walker, 46 N. Y. St. Rep. 158; Clancy *v.* Byrne, 56 N. Y. 129; Swords *v.* Edgar, 59 Id. 28; Clifford *v.* Dam, 81 Id. 52; Davenport *v.* Ruckman, 37 Id. 568; Irvine *v.* Wood, 51 Id. 324. The landlord or owner will remain liable, after a lease and exclusive possession under it taken by a tenant of premises affected by a nuisance at the time of the demise, for an injury occasioned by it to a third person, even though the tenant's negligence combines with the same wrong in producing the result. Id.

Where the wall of a leased building is in such dangerous condition as to make it an apparent nuisance to adjoining owners, the lessor, while it is in that condition, and the lessee, who continues its occupation, are both liable for personal injuries sustained through the falling of the wall. Timlin *v.* Standard Oil Co., 54 Hun, 44. Actual notice of the dangerous conditions, however acquired, is sufficient to charge the parties in such case. Id. This case was reversed in part in 126 N. Y. 514.

If, at the leasing, the owner knew, or if, in the exercises of reasonable care, he would have become informed of the fact that the property has upon it a nuisance, dangerous to the public or to an adjoining owner, it imposes upon the proposed lessor the duty to abate it before he leases the property. Timlin *v.* Standard Oil Co., 126 N. Y. 514.

Note on "Liability of Landlord and Tenant for a Nuisance."

The same liability rests upon a lessee who sub-leases the premises containing the nuisance. Id. The liability of the lessee does not arise upon the execution of the lease. Id. He must have notice of the existence of the nuisance, or time enough must have elapsed in which knowledge of its existence would be obtained by the exercise of reasonable diligence. Id. It is a question whether this rule will apply in case of one who has possession of but a portion of the premises. Id.

A lessee, receiving a benefit from an awning over a sidewalk, erected without license, is liable for an injury incurred therefrom. McParthand v. Thoms, 24 N. Y. St. Rep. 110.

The lessor of a railroad out of possession, though by the terms of the lease it is bound to issue to the lessee its bonds for the cost of constructing an embankment, is not liable for the diversion of water upon the lands of an adjoining owner through such construction by the lessee, where the lessee does the work in his own way and the lessor has no control thereof, and the embankment is not necessarily a nuisance. Miller v. N. Y. L. & W. R. R. Co., 125 N. Y. 118.

A landlord, who knows that the premises are in a dangerous condition and a nuisance to the public and an adjoining owner, or under the circumstances should have knowledge of that fact, is bound to enter upon the premises and repair the same or adopt some steps to avoid the danger before reletting them to a tenant. Timlin v. Standard Oil Co., 126 N. Y. 515. But if he chooses to relet without making such repairs, he assumes the responsibility. Id.

The owners of a pier, who became such during the running of a valid outstanding lease, are not responsible for a nuisance created thereon during the existence of a precedent estate, where they have had no notice thereof. Ahern v. Steele, 115 N. Y. 203. It is not the general rule that an owner of land is, as such, responsible for any nuisance thereon. Such responsibility generally and *prima facie* attaches to the occupant and to him alone. Id. The owner is responsible if he creates a nuisance and maintains it; if he creates a nuisance and then demises the land with the nuisance thereon, although he is out of occupation; if the nuisance was created on the land by a prior owner, or by a stranger, and he knowingly maintains it; if he has demised premises and covenanted to keep them in repair, and omits to repair, and thus they become a nuisance; if he demises the premises to be used as a nuisance, or for a business, or in a way, so that they will necessarily become a nuisance. Id. But an owner, who has demised premises for a term during which they become ruinous, and thus a nuisance, is not responsible for the nuisance unless he has covenanted to repair. Id.

A landlord has never been held responsible for a nuisance for the reason that he did not himself obtain notice of its existence. Ahern v. Steele, 115 N. Y. 203. But it has always been held to be the duty of any person seeking to enforce the landlord's responsibility for a nuisance to show that he had such notice. Id.

Where the occasion of the injury constitutes a nuisance as to the party

complaining, the landlord may be chargeable in damages on the ground that he maintains a nuisance, where the contract of letting contains a covenant authorizing him to re-enter for the purpose of making repairs. Sterger *v.* Van Siclen, 132 N. Y. 199. The decayed steps in the rear of a house leading from the ground to a stoop does not constitute a nuisance as to a person occupying an adjoining house. Id.; Murphy *v.* City of Brooklyn, 98 N. Y. 642. The fact that a landlord leases premises with a condition that he may re-enter for the purpose of making repairs, *does not enlarge* his responsibility as to third persons, or burden him with the duty of observing any greater degree of care in respect to them than would be required if he was in possession. Sterger *v.* Van Siclen, *ante.*